IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

William Henry Jr.,                )
                                  )
            Plaintiff,            )   Case No: 1:05-cv-02084 (ESH)
                                  )
v.                                )
                                  )
UNITED STATES (Government),       )
                                  )
            Defendant.            )
                                  )

**MOTION FOR RECONSIDERATION OF DISMISSAL
ON GROUNDS OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Plaintiff(s) hereby move(s) the Court to Reconsider its dismissal without prejudice of the above captioned action. This Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

In its Memorandum Opinion and Order dismissing the above captioned action without prejudice (hereinafter, "Order"), the Court explained, in considerable detail, the process of exhausting administrative remedies, and how Plaintiff(s) failed in that regard. The Court went on to explain the circumstances under which exceptions to the exhaustion requirement have been found. Order. p.7.

Specifically, the Court quoted Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 105 (D.C. Cir. 1986) (citing Etelson v. Office of Pers. Mgmt., 684 F.2d 918,

RECEIVED

MAY 2 - 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

925 (D.C. Cir. 1982) (hereinafter, "Etelson exception"): "An adverse decision can also be certain if an agency has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider." Plaintiff(s), in responding to the Court's Order to Show Cause, gave a number of reasons why the administrative remedy described in Treasury Regulation 301.7433-1 should be held invalid, or at least inapplicable, in the instant case; how exhaustion of the administrative remedy called for would be futile. Plaintiff(s), in moving for Reconsideration, explain how those same points are evidence that IRS "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider."

## **ADMINISTRATIVE REMEDIES**

To show that IRS "has articulated a very clear position on an issue which it has demonstrated it would be unwilling to reconsider", the Court's attention is respectfully directed to IRS policy regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, states:

"(1)    Returning money wrongfully collected: This Policy Statement has been revoked."

IRS "has articulated a very clear position" on the issue of returning amounts unlawfully collected. There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position; the Policy has been revoked.

IRS "has articulated a very clear position" on the issue of producing records of

agency activity, i.e., federal records, available to Plaintiff(s) as a matter of federal records law, federal records access law, and federal privacy law, which, presumably would support defendants' position that a duty imposed upon Plaintiff(s) has/have gone unheeded. There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position than by IRS' repeated failure, and by counsel's failure, to provide Plaintiff(s) and the Court with records of procedurally proper actions, including but not limited to, production of properly executed certificates of assessment.

Based upon the foregoing, the Court should reconsider, and find the Etelson exception appropriate.

## ADDITIONAL REASONS FOR RECONSIDERATION

The Court is well aware of the History of IRC section 7433 from Plaintiff(s) Response to Order to Show Cause, and Plaintiff(s) will not tax the Court's patience in repeating that history. Plaintiff(s) will respectfully re-direct the Court's attention to what the Bar had to say about 7433's re-amendment in 1998:

> "Congress should not have re-imposed the exhaustion provision. Many plaintiffs bring their actions to federal court under section 7433 because they do not trust the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do not understand the meaning of exhaustion of administrative remedies. These plaintiffs should not be penalized by their good-faith ignorance; instead, federal courts should hear their claims if valid. In addition, few pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should

> understand many people's distrust of the ability of the IRS to proceed with their claims..."

The Bar's recognition that "few pro se plaintiffs have actual notice of the process" is but one of many reasons the Court should find the exception to exhaustion appropriate. "[F]ew pro se plaintiffs have actual notice," because IRS refuses to give it.

IRS, by its absolute failure to notify Citizens, in a publicly available document, of the right to pursue damages under section 7433, "has articulated a very clear position" on the issue of suits for damages. IRS intends that as few people as possible pursue damages under 7433. There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position than by IRS effectively "hiding" of 7433's existence, notwithstanding that Service Policy P-5-2(3) purports a "commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998".

Based upon the foregoing, the Court should reconsider, and find the Etelson exception appropriate.

## DISREGARD OF SERVICE POLICIES

By disregarding Service Policy P-1-1, IRS "has articulated a very clear position on" the Mission of the Service:

> (1)   Mission of the Service: Provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all.

IRM 1.2.1.2.11

There can be no clearer "demonstration that [IRS is] unwilling to reconsider" this position than by IRS' ongoing failure to comply with Service Policy P-1-1, and fulfill the Mission of the Service, by helping Citizens understand and meet their tax responsibilities.

By disregarding Service Policy P-5-2, IRS "has articulated a very clear position" on:

(1) COLLECTING PRINCIPLES: All our decisions about collecting must be guided by these principles. To the extent that they are, we will succeed in our mission.
(2) SERVICE AND ASSISTANCE-All taxpayers are entitled to courteous, responsive, and effective service and assistance in all their dealings with the Service. We will actively assist taxpayers who try to comply with the law, and work to continually improve the quality of our systems and service to meet the needs of our customes. All taxpayers, whether delinquent or fully compliant, are entitled to prompt and professional service whenever they deal with Service employees.
(3) TAXPAYER RIGHTS-We will observe taxpayers' rights, including their rights to privacy and to fair and courteous treatment. This affirms our commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998. Taxpayers will be protected from unauthorized disclosure of information.
(4) COMPLIANCE-The public trust requires us to ensure that all taxpayers promptly file their returns and pay the proper amount of tax, regardless of the amount owed: The public as a whole is our customer, not just delinquent taxpayers. Our customers expect us to promote voluntary compliance by ensuring that all promptly pay their fair share. Employees should work with taxpayers to meet all their filing and paying requirements, not only the delinquency at hand. This involves identifying and addressing non-compliance to prevent future delinquencies. All types of taxpayers (individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.
(5) CASE RESOLUTION-While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency. To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed: All taxpayers are required to pay by the due date of the return. From a broad range of collecting tools, employees will select the one(s) most appropriate for each case. Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), are important elements of an effective

compliance program. When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

1.2.1.5.2

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' ongoing failure to comply with Service Policy P-5-2.

By disregarding Service Policy P-5-16, ,IRS "has articulated a very clear position" on the issue of forebearance:

> (1)   Forbearance when reasonable doubt exists that assessment is correct: Whenever a taxpayer raises a question or presents information creating reasonable doubt as to the correctness or validity of an assessment, reasonable forbearance will be exercised with respect to collection provided (1) adjustment of the taxpayer's claim is within control of the Service, and (2) the interests of the Government will not be jeopardized.
>
> IRM 1.2.1.5.3

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than its repeated failure to exercise reasonable forbearance in compliance with with Service Policy P-5-16, despite its apparent inability to produce procedurally proper certificates of assessment, as mandated in the Internal Revenue Code, and federal records law, federal records access law, and federal privacy law..

By disregarding Service Policy P-5-34, IRS "has articulated a very clear position" on the issue of enforced collection:

> (1)   Collection enforced through seizure and sale of the assets occurs only after thorough consideration of all factors and of alternative collection methods: The facts of a case and alternative collection methods must be thoroughly considered before determining seizure of personal or business assets is appropriate. Taxpayer rights must be respected. The taxpayer's plan to resolve past due taxes while staying current with all future taxes will be considered. Opposing considerations

> must be carefully weighed, and the official responsible for making the decision to seize must be satisfied that other efforts have been made to collect the delinquent taxes without seizing. Alternatives to seizure and sale action may include an installment agreement, offer in compromise, notice of levy, or lien foreclosure. Seizure action is usually the last option in the collection process.
> (2)   All seizures will be approved by the Chief, Collection Division, with other specific seizures also requiring District Director, Assistant District Director, or Counsel approval, or court order.
>
> 1.2.1.5.7

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" enforced collection than by IRS' failure to comply with Service Policy P-5-34(2) in having all seizures approved.

By disregarding Service Policy P-5-47, IRS "has articulated a very clear position" on the issue of liens and levies:

> (1)   Notices of lien generally filed only after taxpayer is contacted in person, by telephone or by notice: *** All pertinent facts must be carefully considered as the filing of the notice of lien may adversely affect the taxpayer's ability to pay and thereby hamper or retard the collection process.
> (2)   *****.
> (3)   Other notice of lien filing requirements: A notice of lien must be filed:
> 1.   prior to instituting levy action on property in possession of the taxpayer; and
> 2.   prior to service of final demand for payment if there is reasonable probability that suit may later be instituted.
>
> IRM 1.2.1.5.13

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-5-47 by instituting levies prior to lien.

By disregarding Service Policy P-6-20, IRS "has articulated a very clear position" on providing information on the application of the tax law:

> (1)   Information provided taxpayers on the application of the tax law: The

> Service will develop and conduct effective programs to make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations.
> (2)    Positive efforts will be made to determine taxpayers' needs and to effectively meet these needs. Information will be provided through a variety of means, including telephone and office assistance programs, mass media and taxpayer publications.
>
> IRM 1.2.1.6.7

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-6-20(1) by making available "comprehensive, accurate, and timely information on the requirements of tax law and regulations".

By disregarding Service Policy P-6-21, IRS "has articulated a very clear position" on the issue of instructing groups of taxpayers *or prospective taxpayers* on their rights and responsibilities under the tax law:

> (1)    Educational programs provided: The Service will conduct taxpayer education programs for taxpayers whose needs for tax information are most effectively met by these means.
> (2)    These educational programs will include those established to assist individuals in meeting their current and future tax obligations, as well as programs designed to instruct groups of taxpayers or prospective taxpayers on their rights and responsibilities under the tax law or on specific tax provisions of common interest.
>
> 1.2.1.6.8

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-6-21 by conducting taxpayer education programs designed to instruct groups of taxpayers <u>or prospective taxpayers</u> on their rights and responsibilities.

By disregarding Service Policy P-10-42, IRS "has articulated a very clear position"

on the issue of complaints or allegations of misconduct or irregularities concerning Service officials or employees:

> (1)   All bona fide complaints or allegations will be investigated: An investigation will be made of all bona fide complaints or allegations of misconduct or irregularities concerning Service officials or employees and in certain instances investigations may be made of non-Service personnel when their actions may affect the integrity of the Service.
>
> IRM 1.2.1.10.4

There can be no clearer "demonstrat[ion] that [IRS is] unwilling to reconsider" than IRS' failure to comply with Service Policy P-10-42, by investigating complaints or allegations of misconduct or irregularities.

## EXHAUSTION / AVAILABLITY OF REMEDY

With Title 26 of the Code of Federal Regulations as evidence, it is apparent that IRS "has articulated a very clear position" on the issue of suits for damages, which it has "demonstrated it would be unwilling to reconsider" by failing to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS "articulated a very clear position" on this issue, "demonstrat[ing] it would be unwilling to reconsider" by failing to amend the regulation to reflect Congress' TBOR II intent at all.

It appears that IRS "[re-]articulated a very clear position" on the suits for damages issue, "demonstrat[ing] it would be unwilling to reconsider" by its failure to prescribe the administrative procedure necessary to give effect to section 7433, as amended, until March 25, 2003, more than four years and nine months after Congress' re-amendment in TBOR III. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's administrative exhaustion requirement.   IRS intends not to be sued.

## THE REGULATION IS AN UNREASONABLE INTERPRETATION

IRS "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" by requiring that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit. This half-year waiting period is extreme. In the context for which the provision was created, this is tantamount to a complete frustration of Congress' intent. Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate. SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

## THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: <u>Reiter v Sonotone Corp.</u>, 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. <u>Richards v United States</u>, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, <u>Consumer Product Safety Comm'n v GTE Sylvania, Inc.</u>, 447 US

102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. <u>Fuller v. United States</u>, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

7433's current language merely restricts an award of damages unless the Court is satisfied that administrative remedies, shown by Service Policy P-5-36, above, to be essentially unavailable absent judicial intervention, have been exhausted.

IRS "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" by using the converting 7433's "...no damages may be awarded..." language into "...no suit may be maintained..." in the regulation.

IRS "has articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider" by using the language that Congress expressly removed from 7433 in TBOR II, and omitted from the TBOR III re-amendment restricting award of judgment.

### SUMMARY

The right to file a civil suit for damages was intended to protect taxpayers from an out of control agency. The administrative remedies provision was intended to facilitate that right. Paraphrasing <u>Pacific Tel. & Tel. Co. v. Public Util. Comm'n</u>, 443 U.S. 1301 (1979):

> Here, the administrative action [the regulation] was the source of the claimed wrong, not a possible avenue for its redress.

Wherefore, plaintiff(s) request(s) that the Court reconsider the courts' dismissal of the instant action, make a finding that the Internal Revenue Service is constantly unwilling

to obey the law and its own policies, is unwilling to reconsider the position it has taken regarding the law, its own policies and the collection actions taken against the plaintiff(s), vacate its order of dismissal and require defendant to either answer plaintiff's complaint or in the alternative grant default in favor of plaintiff(s)

Respectfully Submitted

Dated April 29, 2006

William Henry Jr.
15707 Griggs
Detroit, MI 48238

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on:

Pat S Genis
U.S. Dept of Justice
P.O. Box 277
Washington D.C. 20044

Dated April 29, 2006

William Henry Jr.